UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| MARKEL INSURANCE COMPANY, an Illinois corporation,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>TUCUMCARI TRANSFER, INC., a Utah corporation,<br><br>　　　　　Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING [19] PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS AND DENYING [31] DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>Case No. 2:25-cv-00303-DBB<br><br>District Judge David Barlow |

Before the court is Plaintiff Markel Insurance Company's ("Markel") Motion for Judgment on the Pleadings ("Motion")[1] and Defendant Tucumcari Transfer, Inc.'s ("Tucumcari") Motion for Judgment on the Pleadings ("Tucumcari Motion").[2]

## BACKGROUND

This case involves a single issue, whether an insurance policy between the parties requires Plaintiff Markel to defend and indemnify Defendant Tucumcari in an underlying lawsuit against Tucumcari.[3] Tucumcari operates a McDonald's fast-food franchise.[4] On January 1, 2023, Markel issued an insurance policy (the "Policy") to Tucumcari that included employers liability insurance.[5] After being named as a defendant in an underlying lawsuit, Tucumcari submitted a

---

[1] Plaintiff's Motion for Judgment on the Pleadings ("Markel MJP"), ECF No. 19, filed Oct. 31, 2025.
[2] Defendant's Motion for Judgment on the Pleadings ("Tucumcari MJP"), ECF No. 31, filed Feb. 25, 2026.
[3] *See* Compl. ¶¶ 39–45, ECF No. 1, filed Apr. 18, 2025.
[4] *Id.* ¶ 13.
[5] *Id.* ¶ 1.

1

claim under the Policy for defense and indemnification.[6] On April 18, 2025, Markel filed a Complaint with a single cause of action requesting declaratory judgment that Tucumcari is not entitled to defense and indemnity under the parties' insurance agreement.[7] Defendant Tucumcari filed its Answer and Counterclaim on June 2, 2025.[8] In its answer, Tucumcari asserts two counterclaims requesting declaratory relief that Markel has a duty under the Policy to both defend and indemnify Tucumcari in the underlying lawsuit.[9] Markel filed its Motion for Judgment on the Pleadings on October 21, 2025.[10] Tucumcari filed its Motion for Judgment on the Pleadings on February 25, 2026.[11]

**Underlying Lawsuit**

The underlying lawsuit involves claims by underlying plaintiffs Johana Reding, Alfredo Martinez, and their minor son A.M (collectively "Underlying Plaintiffs").[12] The Underlying Plaintiffs allege that A.M. worked at Tucumcari's McDonald's franchise under the supervision of his adult manager, Ms. Johana Medina.[13] Ms. Medina allegedly behaved inappropriately toward A.M. while they worked, including non-consensual touching, grabbing A.M.'s genitals, kissing A.M., showing A.M. nude photos of herself, and ultimately having sexual intercourse with A.M. in her home.[14] A.M. has allegedly suffered various types of harm due Ms. Medina's behavior.[15]

---

[6] *Id.* ¶ 14.
[7] *Id.*
[8] Answer and Counterclaim, ECF No. 9, filed June 2, 2025.
[9] *Id.* at 13–15.
[10] *See* Markel MJP.
[11] *See* Tucumcari MJP.
[12] Compl. ¶ 2.
[13] Exhibit 2: Medina Lawsuit Compl. ("Underlying Compl.") ¶ 25, ECF No. 1 at 49–67, filed Apr. 18, 2025.
[14] *Id.* ¶¶ 25–28, 33.
[15] *Id.* ¶ 46

The Underlying Plaintiffs assert causes of action against Tucumcari[16] for (1) negligent hiring, training, and supervision; (2) negligence; (3) negligent infliction of emotional distress; (4) intentional infliction of emotional distress; (5) gross negligence; (6) workplace harassment; discrimination, and abuse; (7) loss of filial consortium; and (8) respondeat superior liability.[17] They also generally allege that Tucumcari continued to employ Ms. Medina despite being aware of her misconduct, allowed her to supervise other employees, and did nothing to stop her misconduct.[18]

**The Policy**

The Policy that Markel issued to Tucumcari includes workers compensation insurance and employers liability insurance, but Tucumcari has only made a demand under the latter.[19] Under "Part Two: Employers Liability Insurance" in the Policy, the employers liability insurance applies to "bodily injury by accident or bodily injury by disease."[20] The Policy states:

> We will pay all sums that you legally must pay as damages because of bodily injury to your employees, provided the bodily injury is covered by this Employers Liability Insurance.
> . . .
> We have the right and duty to defend, at our expense, any claim, proceeding or suit against you for damages payable by this insurance.[21]

The Policy also carves out certain coverage exclusions:

> This insurance does not cover:
> . . .
> 5. Bodily injury intentionally caused or aggravated by you;

---

[16] Tucumcari and other McDonald's defendants are collectively referred to as "McDonald's" in the Underlying Complaint.
[17] Underlying Compl. ¶¶ 38–81, 114–120.
[18] *Id.* ¶¶ 30, 31, 37.
[19] Compl. ¶¶ 22–23.
[20] Exhibit One: Workers Compensation and Employers Liability Insurance Policy ("Policy") § 2(A), ECF No. 1 at 13–48, filed Apr. 18, 2025.
[21] *Id.* § 2(B), (D).

. . .
> 7. Damages arising out of coercion, criticism, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination against or termination of any employee, or any personnel practices, policies, acts or omissions;[22]

## STANDARD

Rule 12(c) of the Federal Rules of Civil Procedure permits a party to move for judgment on the pleadings after pleadings are closed.[23] The motion "should not be granted unless the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law."[24] Such a motion is evaluated by "the same standard that applies to a Rule 12(b)(6) motion" to dismiss for failure to state a claim.[25] "[A]ll well-pleaded factual allegations, as distinguished from conclusory allegations, are accepted as true and viewed in the light most favorable to . . . the nonmoving party."[26] When ruling on a Rule 12(c) motion for judgment on the pleadings, courts "may consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity."[27]

## DISCUSSION

Markel argues that it does not have a duty to defend or indemnify Tucumcari in the underlying lawsuit because the underlying claims (1) are intentional under Exclusion 5; (2) arise out of coercion, harassment, and discrimination under Exclusion 7; and (3) arise out of personnel

---

[22] *Id.* § 2(C)(5), (7).
[23] *See* Fed. R. Civ. P. 12(c).
[24] *Colony Ins. v. Burke*, 698 F.3d 1222, 1228 (10th Cir. 2012) (citation omitted).
[25] *Crane v. Utah Dep't of Corr.*, 15 F.4th 1296, 1302 (10th Cir. 2021) (citation omitted).
[26] *Imaginarium LLC v. United States Small Bus. Admin.*, 618 F. Supp. 3d 1225, 1229 (D. Utah 2022) (citing *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997)).
[27] *BV Jordanelle, LLC v. Old Republic Nat'l Title Ins. Co.*, 830 F.3d 1195, 1201 n.3 (10th Cir. 2016) (quoting *Alvarado v. KOB–TV, LLC*, 493 F.3d 1210, 1215 (10th Cir. 2007)).

practices, policies, acts or omissions under Exclusion 7.[28] In Utah, courts focus on two documents when engaging in a duty-to-defend analysis, the insurance policy and the underlying complaint.[29] Essentially, "[t]he test is whether the complaint alleges a risk within the coverage of the policy."[30] "When there are covered and non-covered claims in the same lawsuit, the insurer is obligated to provide a defense to the entire suit, at least until it can limit the suit to those claims outside of the policy coverage."[31]

The duty to defend is related to yet distinct from an insurer's duty to indemnify.[32] The duty to defend is broader because it is controlled by the allegations in the underlying complaint rather than the facts of the underlying case.[33] Thus, "[i]f the 'underlying complaint alleges *any facts* or claims that might fall within the ambit of the policy,' the insurer must offer a defense."[34] Here, both the Policy and the Underlying Complaint are referenced in and attached to Markel's Complaint, are central to the request for declaratory judgment, and are not disputed by the parties. Therefore, the court will consider them in deciding this motion.

I.   **Exclusion 5: Intentional Injury**

Plaintiff first argues that the underlying claims are excluded from coverage under Exclusion 5.[35] Exclusion 5 precludes coverage for "[b]odily injury intentionally caused or aggravated by [Tucumcari].[36] Markel contends that sexual abuse of a minor is not accidental for

---

[28] Markel MJP 9–10.
[29] *Benjamin v. Amica Mut. Ins. Co.*, 2006 UT 37, ¶ 16, 140 P.3d 1210, 1214.
[30] *Id.* (quoting *Fire Ins. Exch. v. Estate of Therkelsen,* 2001 UT 48, ¶ 21 n.3, 27 P.3d 555).
[31] *Id.* at 1216 (quoting *Appleman on Insurance Law and Practice* § 136.2[D] (2d ed. 2006)).
[32] *Summerhaze Co., L.C. v. Fed. Deposit Ins. Corp.*, 2014 UT 28, ¶ 36, 332 P.3d 908, 920.
[33] *Id.*
[34] *Id.* (quoting *Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 301 (Colo. 2003) (en banc)) (emphasis in original).
[35] Markel MJP 15.
[36] Policy § 2(C)(5).

5

purposes of insurance coverage as a matter of law.[37] Because all underlying claims against Tucumcari arise out of it vicarious liability for or alleged knowledge of Ms. Medina's intentional misconduct, all underlying causes of action against Tucumcari allege intentional injury.[38] Defendant responds that such an interpretation erroneously infers that even claims for negligent actions in the Underlying Complaint are actually allegations of intentional injury.[39]

Tucumcari is correct. Even assuming arguendo that all of Ms. Medina's misconduct was intentional, it does not follow that any underlying claims against Tucumcari for negligence are necessarily intentional tort claims as well. For example, the Underlying Complaint pleads causes of action for negligent hiring, negligent training, negligent infliction of emotional distress, general negligence, and gross negligence against Tucumcari.[40] These claims do not allege that Defendant intentionally caused A.M.'s injuries; rather, by their very nature they allege that Defendant unintentionally permitted or created a situation that resulted in A.M.'s injuries.[41]

Utah precedent supports this conclusion. In *Benjamin v. Amica Mutual Insurance Company*, two women alleged that a man intentionally sexually assaulted them but also included claims for negligent infliction of emotional distress.[42] The man's insurer had a duty to defend and indemnify him from claims of accidental harm, but the policy excluded claims of intentional harm.[43] The Utah Supreme Court held that the insurance company had a duty to defend the man because the women were permitted to alternatively plead unintentional causes of action along

---

[37] Markel MJP 15–16.
[38] *Id.* at 17.
[39] Opposition to Plaintiff's Motion for Judgment on the Pleadings ("Opp'n") 8, ECF No. 26, filed Dec. 12, 2025.
[40] Underlying Compl. ¶¶ 38–61, 69–72.
[41] *See Benjamin v. Amica Mut. Ins. Co.,* 2006 UT 37, ¶ 20, 140 P.3d 1210, 1214 ("The crux of a claim for negligent infliction of emotional distress is unintentional injury.").
[42] *Id.* at 1212.
[43] *Id.* at 1214.

with their intentional claims, even though the harmful acts underlying those claims seemed intentional.[44] Thus, even when an underlying complaint "details egregious, intentional conduct," an intentional injury policy exclusion "does not relieve an insurer of its duty to defend claims of unintentional injury."[45]

Here, the plain language of Exclusion 5 only precludes coverage of claims alleging that Tucumcari intentionally caused a bodily injury.[46] The underlying causes of action for negligence fall outside of Exclusion 5 because they allege only unintentional harm, even if that harm arose from Tucumcari's alleged knowledge of an intentional act.

## II.  Exclusion 7: Arising out of Coercion, Harassment, or Discrimination

Next, Plaintiff argues that the underlying claims against Tucumcari are precluded under the portion of Exclusion 7 that states the Policy does not cover "[d]amages arising out of" coercion, harassment, or discrimination.[47] Markel contends that every claim against Tucumcari arises out of Ms. Medina's sexual harassment of A.M.[48] To support its argument, Markel cites to *Rice Enterprises, LLC v. RSUI Indemnity Company*, a Western District of Pennsylvania case.[49]

In *Rice*, a minor working at a McDonald's franchise was allegedly sexually harassed and assaulted by her adult manager.[50] The minor sued the franchise owner for negligent hiring and negligent supervision in addition to other claims.[51] The franchise owner requested defense and

---

[44] *Id.*
[45] *Id.* at 1215.
[46] Policy § 2(C)(5).
[47] Markel MJP 10.
[48] *Id.* at 12.
[49] *Id.* at 10–11.
[50] *Rice Enters., LLC v. RSUI Indem. Co.*, 705 F. Supp. 3d 460, 464 (W.D. Pa. 2023), *aff'd.* No. 24-1880, 2025 WL 1248813 (3d Cir. Apr. 30, 2025).
[51] *Id.* at 465.

indemnification under its employers liability policy, which had an exclusion for "[d]amages arising out of coercion, criticism, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination against or termination of any employee, or any personnel practices, policies, acts or omissions."[52] The court held that this exclusion, which is identical to Exclusion 7 here, precluded coverage because all alleged damages ultimately arose out of the manager's harassment and coercion.[53] The Third Circuit affirmed.

Tucumcari does not discuss or even acknowledge *Rice*. Instead, it summarily responds that "this argument fails for the same reasons" argued earlier: coercion, harassment, and discrimination are intentional torts, and the negligence claims in the Underlying Complaint allege unintentional injuries.[54] But this argument fails to address the fact that Exclusion 7 is facially much broader than Exclusion 5. While Exclusion 5 only precludes claims that directly allege Tucumcari intentionally caused bodily injury, Exclusion 7 precludes any damages *arising out of* harassment.[55] Unintentional bodily injury could still potentially arise out of harassment or coercion. To decide if it does, the court turns to Utah law.[56]

The Utah Supreme Court has specifically defined the term "arising out of" as used in liability insurance policies. In Utah, "[t]he term 'arising out of' is ordinarily understood to mean originating from, incident to, or connected with the item in question."[57] "As used in a liability

---

[52] *Id.* at 467.
[53] *Id.* at 470.
[54] Opp'n 12.
[55] Policy § 2(C)(5), (7).
[56] Tucumcari cites a number of out of district cases for its intentional tort argument. *See* Opp'n 12 n.1. Unlike *Rice*, none of these cases were considering the provision in question. Neither were they addressing the meaning of "arising out of" under Utah insurance law.
[57] *Nat'l Farmers Union Prop. & Cas. Co. v. W. Cas. & Sur. Co.*, 577 P.2d 961, 963 (Utah 1978); *see also Utah Transit Auth. v. Greyhound Lines, Inc.*, 2015 UT 53, ¶ 53, 355 P.3d 947, 961.

insurance policy, the words 'arising out of' are very broad, general and comprehensive."[58] "They are commonly understood to mean originating from, growing out of, or flowing from, and require only that there be some causal relationship between the injury and the risk for which coverage is provided."[59]

Here, the Policy does not define the terms "harassment," "coercion," or "discrimination." However, Ms. Medina's alleged acts in the Underlying Complaint—including nonconsensual kissing, nonconsensual touching of A.M.'s genitals, sending nude photos, engaging in inappropriate conversations, and nonconsensual sexual intercourse—certainly qualify as harassment or sexual harassment under any commonly understood meaning of the term.[60] The Underlying Plaintiffs also characterize Ms. Medina's actions as "harassment" throughout the Underlying Complaint.[61] Therefore, the court must determine whether the damages alleged in the underlying causes of action against Tucumcari "aris[e] out of" Ms. Medina's alleged misconduct to decide whether Policy coverage is precluded under Exclusion 7.

Each of the eight underlying causes of action asserted against Tucumcari claim the same broad list of "general and special damages."[62] Importantly, each underlying claim against Tucumcari is also connected to Ms. Medina's alleged sexual harassment. The first seven

---

[58] *Id.*
[59] *Id.*
[60] For example, the Merriam-Webster Dictionary defines "harass" as "to create an unpleasant or hostile situation for especially by uninvited and unwelcome verbal or physical conduct." *Harass,* MERRIAM-WEBSTER DICTIONARY (11th ed.), https://www.merriam-webster.com/dictionary/harass [https://perma.cc/H62L-KM7K]. Black's Law Dictionary defines "harassment" as "[w]ords, conduct, or action (usu. repeated or persistent) that, being directed at a specific person, annoys, alarms, or causes substantial emotional distress to that person and serves no legitimate purpose. *Harassment*, BLACK'S LAW DICTIONARY (12th ed. 2024). And the Utah court of appeals has said that "touching a person's private or intimate body parts at work may very well be grounds for a sexual harassment claim if nonconsensual." *State v. Rallison*, 2023 UT App 34, ¶ 15, 528 P.3d 1235, 1242. Ms. Medina's alleged conduct in the Underlying Complaint qualifies as harassment under all of these definitions.
[61] *See, e.g.,* Underlying Compl. ¶¶ 41, 49, 74.
[62] *Id.* ¶ 46.

underlying claims allege that Tucumcari injured A.M. and his parents by exposing him to Ms. Medina's harassment and failing to protect him from it.[63] The final underlying claim seeks to hold Tucumcari vicariously responsible for the harassment.[64] The Underlying Complaint does not state facts to support any assertion of damages unrelated to the alleged harassment. Put another way, if the harassment had not occurred, then none of Tucumcari's alleged negligence in hiring or failing to supervise Ms. Medina would have caused any harm. Thus, there is necessarily a causal relationship between the alleged harassment and the damages asserted against Tucumcari. Though many of underlying claims against Tucumcari only allege negligence, the damages asserted in these claims all originate from or grow out of Ms. Medina's actions, so they arise out of harassment under the Policy.[65]

Neither party suggests there are any material issues of fact to be resolved. Instead, they disagree about the scope of the insurance policy's exclusion. The court finds that Exclusion 7 is unambiguous and so applies it as a matter of law. Because all the damages alleged against Tucumcari in the Underlying Complaint arise out of harassment, they are excluded from coverage under the Policy by Exclusion 7.[66] Markel has no duty to defend those uncovered claims.[67] Furthermore, because the duty to defend is broader than the duty to indemnify,[68] Markel has no duty to indemnify Tucumcari for the underlying claims either.

---

[63] *Id.* ¶¶ 38–81, 114–17.
[64] *Id.* ¶¶ 118–20.
[65] *Nat'l Farmers Union Prop. & Cas. Co. v. W. Cas. & Sur. Co.*, 577 P.2d 961, 963 (Utah 1978).
[66] Policy § 2(C)(7).
[67] *Id.* § 2(D) ("We have no duty to defend a claim, proceeding or suit that is not covered by this insurance.").
[68] *Summerhaze Co., L.C. v. Fed. Deposit Ins. Corp.*, 2014 UT 28, ¶ 36, 332 P.3d 908, 920.

### III. Exclusion 7: Arising out of Personnel Practices or Policies

Finally, Plaintiff argues that the damages alleged in the Underlying Complaint arise out of personnel practices and policies and are not covered under Exclusion 7.[69] Because the court has already determined that Markel has no duty to defend Tucumcari under the Policy, there is no need to address this argument.

### IV. Tucumcari's Motion for Judgment on the Pleadings

Defendant Tucumcari has also filed a motion for judgment on the pleadings.[70] As noted above, each party's sole request for relief is a declaration that Markel either is or is not obligated to defend and indemnify Tucumcari in the underlying lawsuit.[71] Thus, granting one motion for judgment on the pleadings would necessarily resolve the other.

The court has reviewed Tucumcari's motion. In it, Defendant primarily argues that the Underlying Complaint alleges several causes of action sounding in negligence and that the Policy covers claims of unintentional conduct.[72] Tucumcari then argues that the inclusion of some intentional claims does not relieve Markel of its duty to defend because an insurer must defend all claims if at least some are covered.[73] Ultimately, Tucumcari concludes that Markel is obligated to defend it under the Policy because the plain language of the Underlying Complaint alleges covered conduct.[74]

However, as the court already explained, even damages for unintentional conduct can "arise out of" harassment as the phrase is defined under Utah law. The Tucumcari motion does

---

[69] Markel MJP 13.
[70] *See* Tucumcari MJP.
[71] Compl. ¶¶ 39–45; Answer and Counterclaim 13–15.
[72] Tucumcari MJP 8.
[73] *Id.*
[74] *Id.* at 11–12.

not raise any new arguments about the "arising out of harassment" exception in Exclusion 7.[75] None of the arguments raised in Defendant's motion for judgment on the pleadings are new or affect the court's reasoning here, so that motion is denied.

## ORDER

Plaintiff's [19] Motion for Judgment on the Pleadings is GRANTED, and Defendant's [31] Motion for Judgment on the Pleadings is DENIED. It is ORDERED that Plaintiff Markel has no obligation under the Policy to defend or indemnify Defendant Tucumcari in the Underlying Lawsuit.

Signed March 11, 2026.

BY THE COURT

_____
David Barlow
United States District Judge

---

[75] *See id.*